**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| TONY RANDALL BASS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25cv272 |
| | ) | |
| CITY OF ROXBORO, NORTH CAROLINA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on the "Motion for Leave to File Exhibits Manually and Under Seal" (Docket Entry 33 (the "Motion") at 1 (all-cap and bold font omitted))[1] filed by Alfred Cox, D. Whitlow, Brandon Knaub, Nicholas Reed, Kenna Davis (collectively, the "Officer Defendants"), and the City of Roxboro (collectively with Officer Defendants, the "Defendants"). Through the Motion, Defendants seek leave "to submit body worn camera recordings as manual filings and to submit the recordings, as well as other exhibits containing confidential personnel information, under seal in support of Defendants' Motion for Summary Judgment." (Id.) For the reasons that follow, the Court will grant the manual filing request and deny the sealing requests.

---

1 Docket Entry page citations utilize the CM/ECF footer's pagination.

## BACKGROUND

This action arises from Officer Defendants' response to a 911 call that Tony Randall Bass (the "Plaintiff") instructed his daughter, Asharie Bass, to make in February 2022. (See Docket Entry 4 (the "Complaint") at 1-14; Docket Entry 41, ¶¶ 1-13.) This incident led to various criminal charges against Plaintiff, but a jury acquitted him of all charges in September 2024. (See generally, e.g., Docket Entry 27-6.) The following March, Plaintiff sued Defendants for alleged use of excessive force, unreasonable seizure, malicious prosecution/abuse of process, failure to provide medical care, failure to intervene, and assault and battery. (See Docket Entry 4 at 1-14.)

"[T]o facilitate the discovery process" (Docket Entry 15 (the "Consent Protective Order") at 2) the parties entered into "a Consent Protective Order" (id. at 1). As relevant to the Motion, the Consent Protective Order provides:

> 7. No CONFIDENTIAL INFORMATION shall be filed in the public record in this action unless by leave of the Court. All material subject to the terms of th[e Consent] Protective Order, including any pleadings, motions, or other papers filed with the court disclosing any such information or material, shall be filed under seal pursuant to court order issued upon a motion by any party seeking to file the documents under seal or restricted access. Where possible, only confidential portions of filings with the court shall be filed under seal. Each time a party seeks to file under seal confidential documents, things, and/or information, said party shall accompany the request with a motion to seal and a supporting memorandum of law specifying (a) the exact documents, things, and/or information, or portions thereof, for which filing under seal is requested;

> (b) where it is necessary for the court to determine the source of the public's right to access before a request to seal may be evaluated, whether any such request to seal seeks to overcome the common law or the First Amendment presumption to access; (c) the specific qualities of the material at issue which justify sealing such material, taking into account the balance of competing interests in access; (d) the reasons why alternatives to sealing are inadequate; and (e) whether there is consent to the motion. Finally, in addition to the motion and supporting memorandum, said party must set out such findings in a proposed order to seal for the court. Any motion requesting leave to file documents under seal or restricted access shall comply with the requirements of Local Rule 79.2 [sic] and the CM/ECF policy manual provisions of Section V.G.1 [sic] and demonstrate that the Confidential Material at issue is entitled to protection under the applicable standards. A party's designation of CONFIDENTIAL INFORMATION as CONFIDENTIAL is that party's direction that the CONFIDENTIAL INFORMATION should be filed under seal or restricted access. A party who wishes to file CONFIDENTIAL INFORMATION and pleadings or briefs quoting or discussing CONFIDENTIAL INFORMATION that has been designated as CONFIDENTIAL by another party may use the provisions of the MDNC CM/ECF provision manual when filing such material.
>
> 8. The designation of documents or information as "CONFIDENTIAL INFORMATION" shall not be conclusive for purposes of the substantive issues in this case. In addition, any party is entitled to challenge, through an appropriate [m]otion to the Court, any designation herein by any other party at any time during this litigation.

(Docket Entry 15 at 5-7 (all-cap font in original).)

For the avoidance of any confusion, after entering the Consent Protective Order, the Court promptly issued an order

> clarifying [the] Consent Protective Order, as follows: notwithstanding the language in Paragraph 7, nothing in [the] Consent Protective Order mandates the filing under seal of materials designated by a party as confidential; to the contrary, a party may seek leave to file material under seal only if that party possesses a good-faith basis to believe that the particular material at issue

> qualifies for sealing under the legal standard applicable to that particular filing context.

(Text Order dated Dec. 17, 2025 (the "Clarification Order").)

After close of discovery (see Text Order dated May 5, 2026 (denying motion to extend discovery deadline of May 1, 2026)), Defendants moved for summary judgment on Plaintiff's claims. (See Docket Entry 22 (the "Summary Judgment Motion") at 1-3.) Defendant Officers filed declarations in support of the Summary Judgment Motion (see Docket Entries 25-29), to which they attached redacted versions of an "Incident/Investigation Report" (Docket Entry 29-2 (at times, the "Incident Report") at 1 (bold and all-cap font omitted); accord Docket Entry 25-2 at 1; Docket Entry 26-2 at 1; Docket Entry 27-5 at 1) and/or "Use of Force Report" (Docket Entry 29-3 (the "Use of Force Report") at 1 (bold font omitted)), as well as slip sheets for video footage from their respective bodyworn cameras (see Docket Entries 25-1, 26-1, 27-1, 29-1). Defendants also filed a declaration from Roxboro Police Chief David Hess, which declaration discusses and incorporates as exhibits the Use of Force Report (Docket Entry 24 (the "Hess Declaration"), ¶ 18 (citing Exhibit 9)); two "citizen complaint[s]" from Plaintiff (id., ¶¶ 19-20 (internal quotation marks omitted) (citing Exhibits 10 and 11 (collectively, "Plaintiff's Complaints"))); an email complaint from a juror in Plaintiff's criminal trial (see id., ¶ 21 (citing Exhibit 12 (the "Juror's Email"))); an "Internal Affairs Investigation [Report]" arising from the juror's complaint (id.,

¶ 22 (citing Exhibit 13 (the "IA Report"))); "[a] list of resident complaints alleging excessive force, unlawful search/seizure, and failure to render medical care to arrestees from 2018 through 2025" (id., ¶ 23 (citing Exhibit 14 (the "Complaint List"))); and an "Internal Affairs Investigation Report" associated with Cox's fatal shooting of an individual named David Brooks, Jr. in 2020 (id., ¶ 27 (citing Exhibit 15 (the "Brooks IA Report"))). (See generally Docket Entry 24.) Defendants originally filed all fifteen exhibits to the Hess Declaration on the public docket, but at a request from defense counsel a few days later, the Clerk's Office removed Exhibits 9 through 15 from the record. (See Docket Entry Text dated June 4, 2026, at Docket Entry 24.)

Defendants seek to file at least some of the foregoing exhibits under seal. (Compare Docket Entries 32-1 to 32-12 (containing as purported sealed exhibits to Summary Judgment Motion all referenced exhibits), with Docket Entry 33 at 3 (omitting Exhibits 12 and 14 from exhibit list).) To support their sealing requests, Defendants filed a declaration from defense counsel. (See Docket Entry 33-1 (the "Sealing Declaration"), ¶ 2.) As relevant to the Motion, the Sealing Declaration states:

> At all times relevant to the Complaint, Defendant Officers, Sergeant Alfred Cox ("Sgt. Cox"), Corporal Devin Shaun Whitlow ("Cpl. Whitlow"), Officer Kenna Davis ("Officer Davis"), Officer Brandon Knaub ("Officer Knaub")[,] and Officer Nicholas Reed ("Officer Reed"), were working as a law enforcement officer employed by the City of Roxboro Police Department.

The City of Roxboro Police Department is a "custodial law enforcement agency" as the term is defined in N.C.G.S. § 132-1.4A(2).

In the course of carrying out law enforcement activities, Defendant Officers each wear a body-worn camera that records interactions with others and falls into the definition of "body-worn camera" under N.C.G.S. § 132-1.4A(1).

During the encounter with Plaintiff at issue in this action, Sgt. Cox, Officer Knaub, Officer Reed, and Officer Davis were wearing body-worn cameras that captured a recording of their interactions.

The likenesses of Plaintiff's wife and three children[] are captured in the video footage.

Upon information and belief, one of Plaintiff's children depicted in the video footage is a minor child.

Upon information and belief, Plaintiff's wife and children have never consented to having a recording of their interaction with Defendant Officers released to the public.

The recordings have not been the subject of a previous order for its disclosure or release.

After Plaintiff's arrest, Defendant Officers each contributed to an Incident/Investigation Report ("I/IR") detailing Plaintiff's arrest.

The I/IR was compiled by Defendant Officers, employees of a public law enforcement agency, for the purpose of attempting to prevent or solve violations of the law. The I/IR therefore constitutes a record of a criminal investigation under N.C.G.S. § 132-1.4.

The City of Roxboro Police Department maintains personnel files for Defendant Officers.

Plaintiff submitted two citizen complaints related to his arrest. Those complaints prompted departmental inquiries that could have resulted in disciplinary actions taken against one or more Defendant Officers. As such, the complaints constitute employee personnel records protected from disclosure by N.C.G.S. § 160A-168.

> Similarly, the City conducted an internal investigation into Plaintiff's arrest generally and into Defendant Officers' use of force in arresting Plaintiff, specifically. The internal investigation could have resulted in disciplinary actions taken against one or more Defendant Officers. As such, the complaints constitute employee personnel records protected from disclosure by N.C.G.S. § 160A-168.
>
> The City also conducted an internal investigation into the death of David Brooks. The internal investigation could have resulted in disciplinary actions taken against one or more Defendant Officers. As such, the complaints constitute employee personnel records protected from disclosure by N.C.G.S. § 160A-168.

(Docket Entry 33-1, ¶¶ 3-16 (internal paragraph numbering omitted).)

## DISCUSSION

### I. Relevant Standards

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." Doe v. Public Citizen, 749 F.3d 246, 265 (4th Cir. 2014) (citing Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004)). "[T]he common law presumption in favor of access attaches to all 'judicial records and documents,'" but "the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone

v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (quoting Nixon, 435 U.S. at 597).

"When presented with a request to seal judicial records," the Court begins by "determin[ing] the source of the right of access with respect to each document," as "only then can it accurately weigh the competing interests at stake." Washington Post, 386 F.3d at 576 (internal quotation marks and brackets omitted). "Th[e common-law] presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access." Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988). The relevant factors include "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). Under the more stringent first-amendment standard, the Court may seal material "only on the basis of a compelling governmental interest, and only if the denial [of access] is narrowly tailored to serve that interest." Stone, 855 F.2d at 180. "The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." United States v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003).

Under either standard, the Court must then evaluate the competing interests via the following approach. First, "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request." Washington Post, 386 F.3d at 576.[2] Next, "it must consider less drastic alternatives to sealing." Id. Finally, "if it decides to seal[,] it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." Id. "Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review." Id.; see also Stone, 855 F.2d at 182 ("The public's right of access to judicial records and documents may be abrogated only in unusual circumstances. The procedures mandated by *Knight* ensure that the decision to seal records will not be made lightly, and make possible meaningful review of a decision to seal."). This approach also reflects the reality that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978), as well as that "the public's business is best done in public," Cochran v. Volvo Grp. N. Am., LLC, 931 F. Supp. 2d 725, 727 (M.D.N.C. 2013). See also Columbus-America Discovery Grp. v. Atlantic Mut. Ins. Co.,

2 "[D]ocketing [the request] reasonably in advance of deciding the issue" satisfies this notice obligation. In re Knight, 743 F.2d at 235.

203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of [court] records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case. It is hardly possible to come to a reasonable conclusion on that score without knowing the facts of the case.").

The legal framework described above also applies to requests by a party to file a redacted document, i.e., a document sealed in part. See Moussaoui, 65 F. App'x at 889 ("As to those documents subject to a right of access, [the court] must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part."); see also Bethesda Softworks, LLC v. Interplay Ent. Corp., Civ. Action No. 09-2357, 2010 WL 3781660, at *9-10 (D. Md. Sept. 23, 2010) (treating motion to redact transcript as motion to seal). "The interest of the public in the flow of information is protected by [the Court's] exercis[e of] independent judgment concerning redactions." Moussaoui, 65 F. App'x at 888 (citing United States v. Pelton, 696 F. Supp. 156, 159 n.2 (D. Md. 1986) ("The court will carefully compare the redacted version [of a transcript] to the unredacted version for accuracy and to determine whether all the proposed deletions are necessary.")).

Moreover, "[w]hen a request to seal pertains to publicly available information, the proponent of that request faces an uphill battle," Danzy v. Coloplast Corp., No. 1:19cv1017, 2022 WL

1591968, at *5 (M.D.N.C. May 19, 2022) (collecting cases denying retroactive sealing requests for publicly available material), as, "once announced to the world, the information lost its secret characteristic," Washington Post, 386 F.3d at 579 (brackets and internal quotation marks omitted). See, e.g., Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08cv918, 2010 WL 1418312, at *10 (M.D.N.C. Apr. 2, 2010) (explaining that, if information was previously disclosed, "any restriction on public access to that same information in this case would serve no purpose"); see also United States v. Loughner, 769 F. Supp. 2d 1188, 1196-97 (D. Ariz. 2011) (noting, in granting motion to unseal, that "neither party has made a convincing case that preventing the possible republication of information that has already become a matter of public knowledge is 'strictly and inescapably necessary' to protect a compelling interest").

Additionally, under this Court's Local Rules, "[s]ealed documents should not be filed unless necessary for determination of the matter before the Court." M.D.N.C. LR 5.4(a)(3) (explaining that, "[i]f only non-confidential portions of a document are necessary, only those portions should be filed, immaterial portions should be redacted, and no motion to seal should be filed"). Nevertheless, "[i]f a party seeks to file documents or portions of documents under seal, the party must file a motion to seal on the

public docket containing a non-confidential description of what is to be sealed." M.D.N.C. LR 5.4(c)(2). Further,

> [n]o motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary and why less drastic alternatives will not afford adequate protection, with evidentiary support, including affidavits or declarations, and with citation to any supporting statutes, case law, or other authority.

M.D.N.C. LR 5.4(c)(3). "If the filing party is the party claiming confidentiality, the [foregoing] materials . . . must be filed with the motion to seal." M.D.N.C. LR 5.4(c)(4)(a). Failure by a party claiming confidentiality to file materials in support of a request to seal "will result in denial of the motion to seal and unsealing of the materials without further notice." M.D.N.C. LR 5.4(c)(3).

Emphasizing that "[s]ealing is [d]isfavored," M.D.N.C. LR 5.4(a) (bold font omitted), this Court's Local Rules further warn that, "[u]nless authorized by statute, rule, or court order, no litigant or third party may file any pleading, brief, exhibit, or other document under seal," M.D.N.C. LR 5.4(a)(1). As such, although parties may "enter into a confidentiality agreement that provides that certain information exchanged between them in the course of discovery will remain confidential," they "cannot agree to the sealing of documents filed in court without following the mandatory procedures set forth in [Local Rule 5.4]." M.D.N.C. LR 5.4 Commentary.

## II. Analysis

Albeit without development, the Motion first requests leave to file manually rather than electronically certain bodyworn camera footage offered in support of Defendants' Summary Judgment Motion. (See Docket Entry 33 at 1-2, 6.) Because CM/ECF, the Court's electronic filing system, "only accepts documents in a portable document format (PDF)," M.D.N.C. Electronic Case Filing Administrative Polices & Procedures Manual at 3, the Court will grant the request to manually file the bodyworn camera footage.

The Motion further seeks leave to file such footage, as well as other exhibits in support of Defendants' Summary Judgment Motion, under seal. (See Docket Entry 33 at 1-6.) The First Amendment thus governs Defendants' sealing requests. See Rushford, 846 F.2d at 253 (concluding "that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case"). The Motion has appeared on the public docket, without opposition thereto, since the summer. (See Docket Entries dated June 2, 2026, to present.) This public docketing satisfies the procedural prerequisites to consideration of the Motion's sealing requests. See In re Knight, 743 F.2d at 235.

Per the Motion, "Defendants seek to submit [under seal] body worn camera footage, records of criminal investigations, and confidential personnel documents in support of their [m]otion for

[s]ummary [j]udgment on Plaintiff's claims, which center on his arrest by the individual Defendant Officers." (Docket Entry 33 at 1.) Defendants, though, fail to justify their sealing requests. To begin, Defendants urge sealing on the grounds that many of the items qualify as "confidential information protected from disclosure by the Consent Protective Order entered in this matter." (Id. at 2 (citing Docket Entry 15); see also id. at 5 ("[T]he exhibits are confidential and protected from disclosure by the Consent Protective Order entered in this case.").) However, as this Court's Local Rules and Clarification Order make clear, the parties' Consent Protective Order does not itself justify, let alone govern, any sealing requests in this matter. (See, e.g., Text Order dated Dec. 17, 2025.)

Defendants further assert that the Court should seal the submitted bodyworn camera recordings "because they are maintained as confidential pursuant to N.C.G.S. § 132-1.4A, and because they depict Plaintiff's wife and children, who have not given consent for the recording[s] to be publicly disclosed." (Docket Entry 33 at 2-3 (citing Docket Entry 33-1, ¶ 9).) This assertion lacks merit. As an initial matter, the specified North Carolina statute does not justify sealing the recordings under the applicable first-amendment standard. See, e.g., Wilson as Adm'r of Est. of Wilson v. Davidson Cnty. Sheriff's Off., No. 1:24cv219, 2026 WL 1493690, at *4, 9 (M.D.N.C. May 28, 2026) (denying request to seal jail

surveillance and bodyworn camera footage, explaining that "[North Carolina General Statutes Sections 132-1.4, 132-1.4A, and 132-1.7] fail to satisfy the first-amendment standards for sealing court filings"); Sides v. Kimbrough, No. 1:23cv502, 2024 WL 99490, at *10 (M.D.N.C. Jan. 9, 2024) (denying request to seal law enforcement recordings notwithstanding argument that "'North Carolina's General Statutes restrict [the] handling of the video recordings at issue'"); Anderson v. Winston-Salem Police Dep't, No. 1:20cv596, 2022 WL 3586022, at *17 (M.D.N.C. Aug. 22, 2022) (rejecting argument that state statute justified sealing bodyworn camera footage subject to first-amendment right of access), recommendation adopted sub nom. Anderson v. Ferguson, No. 1:20cv596, 2022 WL 4237518 (M.D.N.C. Sept. 14, 2022), aff'd, No. 22-7199, 2025 WL 2170729 (4th Cir. July 31, 2025).

Moreover, the declarations that Officer Defendants filed in support of the Summary Judgment Motion contain descriptions and "screen capture images . . . taken from the recording captured from [the relevant officer's bodyworn camera]" (Docket Entry 29, ¶ 5), which depict Plaintiff's wife and children and describe their conduct during the relevant incident. (See generally Docket Entries 25-27, 29.) Particularly given Defendants' public disclosure of such images and information, their arguments regarding the need to maintain Plaintiff's family's privacy miss the mark. See, e.g., Danzy, 2022 WL 1591968, at *5. Additionally,

the parties dispute what occurred during Defendant Officers' interactions with Plaintiff (compare, e.g., Docket Entry 29, with, e.g., Docket Entry 39), and rely on the bodyworn camera footage for their respective positions (see Docket Entries 38, 44), heightening the likely importance of this footage to resolution of the Summary Judgment Motion and further militating against its sealing. Accordingly, Defendants have not overcome the first-amendment right of access to the bodyworn camera footage. See Washington Post, 386 F.3d at 575 ("The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position.").

Defendants next seek to seal "Incident/Investigation Reports ('I/IRs') pertinent to Plaintiff's arrest" (Docket Entry 33 at 3), by which description they apparently intend to encompass both the Incident Report and the Use of Force Report (see id. (citing both exhibits as submitted "I/IRs")),[3] which they maintain "constitute records of criminal investigations protected from disclosure by N.C.G.S. § 132-1.4" (id.) that "may only be released by court order" (id.). (See also Docket Entry 33-2 at 1-2 (identifying

---

3 The Motion also includes the Use of Force Report in its list of purported "personnel information" submitted as an exhibit to the Hess Declaration. (Id.; see Docket Entry 24, ¶ 18.) However, Defendants' Local Rule 5.4(c) Summary Chart specifies "[r]ecord of [c]riminal [i]nvestigation" rather than "[c]onfidential [p]ersonnel [i]nformation" (Docket Entry 33-2 at 2) as the "[b]asis for [s]ealing" (id. (bold font omitted)) the Use of Force Report (see id.).

Incident Report and Use of Force Report as "[r]ecord[s] of [c]riminal [i]nvestigation" in Defendants' Local Rule 5.4 Summary Chart).)[4] According to Defendants, "disclosure of the I/IRs risks revealing information that could impair the City's investigation of crimes using information contained in the I/IRs." (Docket Entry 33 at 5.) However, Defendants filed redacted versions of both the Incident Report and the Use of Force Report on the public docket (see, e.g., Docket Entries 29-2, 29-3), irreparably undermining any argument that the disclosed information should be sealed, see, e.g., Loughner, 769 F. Supp. 2d at 1196-97.

Contrary to the Local Rules, see M.D.N.C. LR 5.4(c)(8) (mandating that "the information sought to be sealed must be highlighted" in version submitted under temporary seal), Defendants did not highlight the information that they seek to seal by redaction in the unredacted versions of these documents that they filed under temporary seal (see Docket Entries 32-5, 32-6). The Incident Report and the Use of Force Report contain very few redactions, however, most of which appear to involve personally identifying information such as dates of birth, telephone numbers,

---

4 Notably, the Sealing Declaration does not discuss the Use of Force Report. (See generally Docket Entry 33-1.) This failure alone warrants denial of Defendants' sealing request as to the Use of Force Report. See, e.g., Moussaoui, 65 F. App'x at 889 ("The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access."); M.D.N.C. LR 5.4(c)(3) ("Failure to file [Local Rule] 5.4(c)(3) supporting materials will result in denial of the motion to seal and unsealing of the materials without further notice.").

and a driver's license number. (See Docket Entries 29-2, 29-3.) Defendants have not explained why such information remains "necessary for determination of the matter before the Court," M.D.N.C. LR 5.4(a)(3), as required for any sealing request, see id. ("If only non-confidential portions of a document are necessary, only those portions should be filed, immaterial portions should be redacted, and no motion to seal should be filed."). (See Docket Entries 33, 33-1.) The name of the 911 caller constitutes the only arguably substantively relevant redacted information in either document (see Docket Entries 29-2, 29-3), but that information appears both undisputed and elsewhere in the public record (see, e.g., Docket Entry 29, ¶¶ 4, 43; Docket Entry 41, ¶¶ 1-13), rendering unnecessary Defendants' request to seal by redaction such information, see, e.g., Washington Post, 386 F.3d at 579 (observing that, "once announced to the world, the information lost its secret characteristic" (brackets and internal quotation marks omitted)). Defendants have thus failed to justify their request to seal by redaction the Incident Report and the Use of Force Report.

Finally, the Motion seeks to seal Hess Declaration Exhibits "10, 11, 13, [and] 15" on the grounds that they "constitute[] confidential personnel information protected from disclosure by N.C.G.S. § 160A-168." (Docket Entry 33 at 3.) Notably, the Motion does not mention Hess Declaration Exhibits 12 and 14, the Complaint List and Juror's Email. (See id. at 1-6.) However, Defendants'

Local Rule 5.4 Summary Chart identifies Hess Declaration Exhibit 14, the "Details of Citizen Complaints, 2018-2024," as "[c]onfidential [p]ersonnel [i]nformation" for which Defendants seek sealing. (Docket Entry 33-2 at 2.) Moreover, Defendants included the Complaint List and the Juror's Email among the documents that they filed under temporary seal. (See Docket Entries 32-9, 32-11.) Nevertheless, the Sealing Declaration mentions neither the Complaint List nor the Juror's Email. (See generally Docket Entry 33-1.) Thus, to the extent that they seek such sealing, Defendants have not justified sealing the Complaint List and Juror's Email. See, e.g., Moussaoui, 65 F. App'x at 889 ("The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access."); M.D.N.C. LR 5.4(c)(2) (requiring "a non-confidential description of what is to be sealed" in every motion to seal); M.D.N.C. LR 5.4(c)(3) ("Failure to file [Local Rule] 5.4(c)(3) supporting materials will result in denial of the motion to seal and unsealing of the materials without further notice.").

As for the remaining materials, the Motion describes them as "evidence of Internal Affairs investigations into Plaintiff's arrest that constitutes confidential personnel information protected from disclosure by N.C.G.S. § 160A-168." (Docket Entry 33 at 3.) Notably, this description excludes the Brooks IA Report. (See id.; see generally Docket Entry 32-12 (lacking any information

regarding Plaintiff's arrest).) Moreover, as support for Defendants' sealing requests, the Sealing Declaration asserts that "the complaints constitute employee personnel records protected from disclosure by N.C.G.S. § 160A-168" because the associated investigations "could have resulted in disciplinary actions taken against one or more Defendant Officers." (Docket Entry 33-1, ¶¶ 14-16 (emphasis added).) Even if the Court (i) construed the Sealing Declaration as referencing the IA Report and Brooks IA Report in addition to Plaintiff's Complaints and (ii) accepted Defendants' expansive classification of these materials as personnel records (see id.), Defendants would still fail to justify their sealing requests.

As an initial matter, Plaintiff's Complaints contain reports that Plaintiff drafted and, per their certifications, received photocopies thereof, as well as a complaint processing procedures form bearing an apparent annotation from Plaintiff reflecting transmission of the relevant report to the City Council. (See Docket Entry 32-7 at 5-7; Docket Entry 32-8 at 3-4.)[5] In addition, the publicly available Hess Declaration describes and quotes from Plaintiff's Complaints. (See Docket Entry 24, ¶¶ 19-20.) Defendants do not explain why such otherwise available information nevertheless warrants sealing. (See Docket Entry 33 at 4-5

5 Both documents also contain entirely blank pages. (See Docket Entry 32-7 at 4; Docket Entry 32-8 at 6, 8.)

(arguing instead that submitted "exhibits are certainly confidential" because they "contain confidential employment/personnel information").)

Defendants further assert that their sealing "request is narrowly tailored" because "[t]he documents to be filed under seal are limited to the body worn camera recordings, I/IRs, and documents containing sensitive personnel information" and "Defendants do not seek to submit all their filings pertaining to summary judgment under seal." (Id. at 5.) That Defendants do not seek to file the entirety of their summary judgment materials under seal does not render their requests narrowly tailored. See, e.g., Moussaoui, 65 F. App'x at 889 (explaining that sealing assessment occurs "document by document," noting that "sealing an entire document is inappropriate when selective redaction will adequately protect the interests involved," and requiring "a statement of the reason for [each] proposed redaction").

Defendants next argue that "the balance of interests weighs in favor of allowing filing under seal" as, in Defendants' view, "the personnel information, while essential to a determination of the claims in this action, is of little importance to any public matters." (Docket Entry 33 at 6 (internal quotation marks omitted).) Belying their contentions regarding the purported "essential" nature of such information (id.), Defendants rely on only one of the relevant Hess Declaration exhibits — the IA Report

— in their summary judgment memoranda. (See Docket Entry 30 at 1-36 (omitting any citations to Complaint List, Juror's Email, Plaintiff's Complaints, and Brooks IA Report); Docket Entry 44 at 1-22 (same).) Moreover, Defendants only cite the IA Report to support their description of domestic violence training that officers receive. (See Docket Entry 30 at 14 (citing "Hess Decl., Ex. 13, at 3-4"); Docket Entry 44 at 15 (citing "DE 24-13 at 3-4").) Notably, the cited material reflects only Hess's unsworn description of officers' domestic violence training (see Docket Entry 32-10 at 3-4), but Defendants do not explain why they could not include such description in the Hess Declaration (see Docket Entry 33 at 1-6). Particularly given that "[t]he [C]ourt need consider only the cited materials[ in resolving a summary judgment motion]," Fed. R. Civ. P. 56(c)(3), Defendants have shown neither why the relevant exhibits qualify as "necessary for determination of the [Summary Judgment Motion]," M.D.N.C. LR 5.4(a)(3), nor why they could not redact any "private personnel information" (Docket Entry 33 at 5) therefrom (see id. at 1-6). Defendants have thus not met their "burden of establishing that [the relevant] document[s] should be sealed," Moussaoui, 65 F. App'x at 889.

As a final matter, the Motion contains the following "election if motion to seal is denied" (Docket Entry 33 at 6 (bold, underlined, and all-cap font omitted)):

> Should the Court deny the motion to seal as to the body worn camera footage, Defendants respectfully request

> that the Court allow Defendants to submit the body worn camera footage manually, but not under seal, submit redacted law enforcement investigative documents, and withdraw the personnel materials from the file before any conditionally sealed documents are opened.

(Id.)[6]

Given the irrelevance of the documentary information that Defendants sought to seal through the Motion, the Court will strike the unredacted versions of the Incident Report and the Use of Force Report as well as the temporarily sealed Hess Declaration exhibits. Because they rely thereon in their summary judgment memoranda, however, Defendants should promptly file pages three and four of the IA Report, although they may redact everything other than the domestic violence training information therefrom.

## CONCLUSION

The Court's filing system requires manual filing of video recordings, but Defendants fail to justify their sealing requests.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 33) is **GRANTED IN PART AND DENIED IN PART** as follows: on or before Wednesday, December 2, 2026, (i) Defendants shall manually file the bodyworn camera footage with the Clerk's Office; (ii) the Clerk shall **STRIKE** Docket Entries 32 to 32-12; and (iii) Defendants shall

---

6 In an apparent oversight, the "Local Rule 5.4 Checklist" (Docket Entry 35 at 1 (bold, underlined, and all-cap font omitted)) that Defendants submitted nearly three weeks after filing the Motion (see id. at 5) selects "No" (id. at 2) in answer to the question, "Does the motion include an election to have the underlying documents withdrawn if the motion to seal is denied?" (id.).

file an appropriately redacted version of pages three and four of the IA Report.

This 25th day of November, 2026.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**